UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ELISABETH GRIMSHAW, an individual, GENE ERIC GRIMSHAW, an individual, | Case No. 2:20-cv-01068-GMN-EJY |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | Re: ECF No 35 |
| TARGET CORPORATION, a Minnesota corporation; METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY, a Rhode Island Corporation dba METLIFE AUTO & HOME; DOE individuals 1-20, inclusive and ROE Business Entities 1-20, inclusive, | Motion for leave to File Third Party Complaint |
| Defendants. | |

Pending before the Court is the Motion for Leave to File Third-party Complaint submitted by Defendant Metropolitan Property & Casualty Insurance Company dba Metlife Auto & Home ("Metlife"). ECF No. 35. The Court has considered Metlife's Motion, Target Corporation's ("Target") Opposition (ECF No. 38), and Metlife's Reply (ECF No. 39).

**I.    Background Relevant to the Instant Motion**

Plaintiffs moved from New York to Las Vegas based on a job promotion offered by Target. Target arranged and paid for the transportation of Plaintiffs' personal belongings through North American Van Lines ("NAVL"). ECF No. 15 at 3. Beltman Group, Inc., dba Beltman Relocation Group ("Beltman"), an agent of NAVL, loaded and transported Plaintiffs' possessions, while Frederick Dewayne Billups ("Billups") drove the moving van.[1] Unfortunately, the moving van caught fire somewhere near Kingman, Arizona, and all of Plaintiffs' possessions were destroyed. ECF Nos. 15 at ¶ 63; 38 at 4.

In addition to the insurance that was part of the contract between Target and NAVL covering Plaintiffs' property during the move, Plaintiffs had a Metlife insurance policy (the "Policy")

---

[1]    Beltman and Billups are sometimes referred to herein as NAVL's agents.

1

covering their household goods and personal/business property, the terms of which are at issue in this case. ECF No. 35 at 3. Metlife avers that the Policy has a maximum payout amount for "a covered loss" and is "excess over any amounts payable under other insurance." *Id*. Thus, after Plaintiffs collected $163,080 from insurance coverage procured by Target through NAVL, Metlife offset that amount against the alleged maximum coverage under the Policy and paid Plaintiffs $64,290.30. *Id*. at 3-4. This amount does not total the $400,000 in loss Plaintiffs claim and does not exhaust the Policy limits. ECF No. 15 ¶¶ 64, 82-83.

Plaintiffs have sued Metlife claiming the Policy does not allow the offset Metlife took, and Metlife must therefore pay the remainder of the amount available under the Policy. Plaintiffs' Complaint alleges breach of contract, breach of the covenant of good faith and fair dealing, and breach of Nevada insurance statutes against Metlife. Plaintiffs' claims against Target include breach of contract, breach of the covenant of good faith and fair dealing, negligence, and negligent performance. Plaintiffs do not sue NAVL or its agents in this action.

Metlife seeks to bring a third-party complaint for subrogation and equitable and implied indemnity against NAVL, Beltman, and Billups because these three proposed third-party defendants "are the actual responsible parties for Plaintiffs' damages" and therefore "are liable to Metlife for all or part of Plaintiffs' claim against Metlife." ECF No. 35 at 6 (capitalizations removed from original). Metlife further states that "Plaintiffs have not received full compensation from" NAVL, Beltman, and Billups "even though it is alleged that the fire was clearly a result of their negligence" and, "as such, Metlife is seeking recovery of the money it has already paid or any future payments that it may be ordered to pay from the parties responsible for Plaintiffs' damages." *Id*. at 7.

Target opposes Metlife's Motion arguing MetLife's claims against the proposed third-party defendants are preempted under the Carmack Amendment (which controls and limits liability of common carriers) and barred because Plaintiffs "accepted a final settlement payment" that Target alleges precludes Plaintiffs' claims against NAVL, Beltman, and Billups. ECF No. 38. In response, Metlife argues Target lacks standing to challenge Metlife's Motion. Metlife further argues Target is not prejudiced by the third-party complaint, and the Carmack Amendment does not bar its proposed claims. ECF No. 39.

## II.    Discussion

### A.    Rule 14 of the Federal Rules of Civil Procedure.

Under Rule 14(a), a defending party, as a third-party plaintiff, may implead a third-party defendant "who is or may be liable to" the defending party arising from the claims asserted by the plaintiff. Fed. R. Civ. P. 14(a). The defendant "must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." *Id*. "[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereof." *Stewart v. Am. Intern. Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). "The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." *Id*. (citation omitted). "Rule 14 was designed to provide for the adjudication of rights of all persons involved in a controversy in order to avoid circuity of actions and multiplicity of suits." *Nev. Eighty-Eight, Inc. v. Title Ins. Co. of Minn.*, 753 F. Supp. 1516, 1529 (D. Nev. 1990). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Stewart*, 845 F.2d at 200 (quoting Wright & Miller, 6 Fed. Prac. & Proc. § 1446 at 257 (1971 ed.)). "The decision on leave to file a third-party complaint is within the district court's sound discretion." *Clark Cty. v. Jacobs Facilities, Inc.*, Case No. 2:10-cv-00194-LRH-PAL, 2011 WL 4458797, at *1 (D. Nev. Sept. 23, 2011).

However, as explained in *Jacobs Facilities*, it is improper for the Court to reach the merits of Metlife's proposed third party complaint at the pleading stage. *Id*. "The authorities … [supporting] the proposition that leave may be denied based on futility govern leave to file an amended complaint, not leave to file a third-party complaint. Rule 14(a) expressly permits impleader where the proposed third-party defendant 'may be liable' to the original defendant, and Defendants' third-party complaint asserts at least a colorable claim for relief.  Any Rule 12 defenses to Defendants' third-party claim are properly raised by [the] … third-party defendant in its answer to the third-party complaint, not … in opposition to a motion for leave to file." *Id*. *See also Goodrich v. GRG Enterprises, LLC*, Case No. 2:20-cv-00671-JCM-NJK, 2020 L 5994993, at *2 (D. Nev. Oct. 8, 2020) (citation omitted) (whether a defendant's third party complaint state a claim "is

1  inconsequential for purposes of" a motion for leave to file a third party complaint); *Clarke v. Public*

2  *Employees Union Local 1*, Case No. 16-cv-04954-JSC, 2017 WL 550231, at *3 (N.D. Ca. Feb. 10,

3  2017) *citing Jacobs*, 2011 WL 4458797, at *1, and *Villegas v. Hackett*, Case No. 03 CV 2133, 2007

4  WL 4277509, at *3 (S.D. Cal. Dec. 5, 2007) (declining to address the parties' arguments about "the

5  issue of viability" of the third party complaint on a Rule 14 motion for leave to file a third-party

6  complaint because "that issue is not now before the court").[2]

7      B.      The Carmack Amendment.

8      The Carmack Amendment (the "Amendment"), 49 U.S.C. § 14706, was originally passed in

9  1906, as an amendment to "the Interstate Commerce Act … [to] establish a uniform system of

10  liability for carriers of goods in interstate commerce." *OneBeacon Ins. Co. v. Haas Industries, Inc.*,

11  634 F.3d 1092, 1096 (9th Cir. 2011) (citing *Adams Express Co., v. Croninger*, 226 U.S. 491, 503-

12  06 (1913)). "The purpose of the … Amendment was to relieve shippers of the burden of searching

13  out a particular negligent carrier from among the often numerous carriers handling an interstate

14  shipment of goods." *Id*. (internal citation omitted). "The Amendment accomplishes this purpose by

15  imposing liability on the receiving, delivering, and any intermediate carriers regardless of which

16  carrier is at fault." *Id*. at 1097 (internal citation omitted). Importantly, the Amendment "also

17  regulates a carrier's ability to limit liability for lost or damaged goods." *Id*. (citation omitted).

18      The statute "requires a motor carrier to issue a receipt or bill of lading for the property it

19  transports … and [limits liability] to the person entitled to recover under the receipt or bill of lading

20  …." *Id*. *citing* 49 U.S.C. § 14706(a)(1). With respect to who may sue under the statute, that is, who

21  has standing to sue, the Ninth Circuit directs the Court to "look to the bill of lading." *Id*. at 1098.

22  The Ninth Circuit also holds that a bill of lading is interpreted consistent with the general principles

23  of contract interpretation. *Id*. (citation omitted).

24

25

26

27  [2]    With respect to Metlife's argument that Target lacks standing to oppose Metlife's instant Motion, the Court disagrees. Rule 14(a)(4) states that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." *See also Nevada Eighty-Eight, Inc.* 753 F.Supp. at 1529 (Rule 14(a) conferred standing on plaintiff to seek

28  dismissal of the third-party complaint).

4

C.    <u>Analysis of Metlife's Proposed Third Party Complaint</u>.

In this case there is no dispute that Plaintiffs' property was destroyed because of events arising from the transportation of that property by NAVL and its agents as arranged and contracted for by Target.  It is also undisputed that (i) Plaintiffs claim third party beneficiary status under the contract between Target and NAVL, and (ii) Metlife separately insured Plaintiffs' goods that were destroyed.  ECF No. 15 ¶¶ 43, 61-63.  Metlife seeks to assert indemnification and subrogation rights against NAVL, Beltman, and Billups for past and future payments to Plaintiffs arising from NAVL and its agents' alleged negligence.  Clearly, Metlife's claims arise from the same transaction or set of facts that support Plaintiffs' claims against Target, but that is an insufficient basis to permit the proposed third-party complaint to proceed.  *Stewart*, 845 F.2d at 199.  The proposed third-party complaint must demonstrate that NAVL, Beltman, and Billups' liability to Metlife "is in some way dependent on the outcome of the main claim and is secondary or derivative thereof."  *Id*.

1.    *Subrogation*.

Unlike the decisions in *Jacobs Facilities* and *Goodrich*, Metlife's claims against NAVL, Beltman, and Billups are not dependent on the outcome of Plaintiffs' claims against Target or Metlife.  If Metlife is liable to Plaintiffs for amounts in addition to what it has already paid Plaintiffs, that liability will arise from an interpretation of the Policy issued by Metlife and will not be based on whether Plaintiffs succeed on their negligence or breached of contract claims against Target (the only other defendant) as asserted in this action.  *See* ECF No. 35 at 3-4.  That is, while it is *possible* that the amount Metlife *might* claim against the proposed NAVL and its agents based on subrogation could *potentially* be impacted by the outcome of Plaintiffs' claims against Target, the success or failure of Metlife's subrogation claim is independent of these claims.  *See Old Colony Ins. v. Jeffrey's Mill & Warehouse, Inc.*, 146 F.Supp. 277, 278 (N.D. Ca. 1956) (subrogation rights will depend on "the meaning of the above provision in the insurance policy"); *Arch Insurance Co. v. Safeco Insurance Company of America*, Case No. C18-1591-JCC, 2019 WL 3205680, at *7 n.10 (W.D. Wash. July 16, 2019) (discussing arguments pertaining to which insurer is primary and which is excess creating questions of fact and*, inter alia*, "proper interpretation of Plaintiff's policies") (internal citation omitted).

In fact, it is unclear to the Court how Metlife's assertion that "Plaintiffs have an existing cause of action against Third-Party Defendants [NAVL, Beltman, and Billups] that the Plaintiffs could have asserted and which by subrogation Metlife is allowed to pursue" is derivative of Plaintiffs' main claims against Target or Metlife.  ECF No. 35-1 ¶ 36; *Stewart*, 845 F.2d at 199.  Plaintiffs have not brought a claim in the present action against NAVL and its agents, which may well be because Plaintiffs have collected what they can from these third parties under the Carmack Amendment[3] and therefore reached a full and final settlement.[4]  ECF No. 38 at 7.  Indeed, it is a basic principle of subrogation "that the subrogee's rights can be no broader than the rights of the subrogor."  *In re Air Crash Near Nantucket Island, Massachusetts, on October 31, 1999*, 392 F.Supp.2d 461, 477 (E.D.N.Y. 2005); *see also Arch Insurance Co.*, 2019 WL 3205680 at *7 ("An insurer entitled to subrogation stands in the shoes of the insured and is entitled to the same rights and subject to the same defenses as the insured.").  In any event, deciding whether the Carmack Amendment or the settlement impact Metlife's subrogation claim goes well beyond the issue presently before the Court, which is limited to whether Metlife's Motion seeking leave to file a third-party complaint should be granted.  The Court does not decide the merits of Metlife's proposed subrogation claims in this Order.

> 2.    *Indemnity*.

With respect to Metlife's equitable and implied indemnity claims, the District of Nevada previously found that "Federal Rule of Civil Procedure 14 allows a defendant to implead a party who may be liable to indemnify against, or contribute to, any judgment awarded against the defendant."  *Corbo v. Laessig*, Case No. 2:10-cv-316-GMN-LRL, 2012 WL 1068271, at *6 (D. Nev. Mar. 28, 2012).

---

[3]    The Carmack Amendment requires the Court to consider to what extent NAVL and its agents (Beltman and Billups) have "effectively limited" their liability through the bill of lading as allowed by 49 U.S.C. §§ 14706(a)(1) and (c)(1)(A).  Section 14706(c)(1)(A) of the Carmack Amendment states, in pertinent part that a motor carrier may "establish rates for the transportation of property (other than household goods described in section 13102(10)(A)) under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation."

[4]    While Target provides the Court with the bill of lading (ECF No. 38-2), it did not provide a copy of the settlement documents.

1

2

3

4

> Although a cause of action for indemnity does not arise in Nevada until the party seeking indemnity has discharged a legal obligation through settlement or judgment, … a federal court may entertain such a cause of action "prematurely" so long as (1) any resulting judgment against a third-party defendant is made contingent on the defendant's payment to the plaintiff or (2) the court stays any judgment against a third-party defendant until the defendant shows that it has paid the plaintiff.

5

*Id*. (internal citations omitted).  Here, any judgment against NAVL and its agents, as third-party

6

defendants, would be contingent on Metlife's payments to Plaintiffs.  Thus, this claim could

7

potentially proceed under Rule 14(a); however, as a matter of law, even if Metlife is required to pay

8

Plaintiffs more than it already has as a result of the outcome of Plaintiffs' Complaint, Metlife will

9

still have to separately prove a right to equitable or implied indemnity.  Although these claims are

10

more closely tied to the main claims brought by Plaintiffs, the Court exercises its discretion and, for

11

the reasons stated below, finds this an insufficient basis to grant Metlife's Motion.

12

        *3.     The Motion is denied.*

13

      While granting Metlife's request to file third-party claims avoids the multiplicity of lawsuits,

14

the outcome of those claims may require interpretation of subrogation rights under the Policy,

15

application of the Carmack Amendment, and consideration of the settlement reached by Plaintiffs

16

with one or more of the proposed third-party defendants.  The current claims asserted by Plaintiffs

17

require no consideration of these issues, which are extraneous to Plaintiffs' negligence and breach

18

of contract claims against Target and Metlife.[5]  Pursuing and deciding Metlife's proposed claims

19

against NAVL and its agents, based on subrogation will necessarily distract from Plaintiffs'

20

negligence and breach of contract claims against Target and Metlife.

21

      "It is not an abuse of discretion to deny an application for impleader where it will

22

disadvantage the existing action." *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769,

23

777 (9th Cir. 1986) *citing* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1443, at 210

24

(1971).  "In its discretion, the trial court should consider the timeliness of the motion, whether the

25

impleader is likely to delay the trial, and whether the impleader will cause prejudice to the original

26

plaintiff." *Helferich Patent Licensing, LLC v. Legacy Partners, LLC*, 917 F.Supp.2d 985, 988 (D.

27

28

---

[5]     The claim against Metlife is not whether it can subrogate, but whether its coverage is in "excess" of other coverage.  ECF No. 15 ¶¶ 82-85.

1   Ariz. 2013) *citing Irwin v. Mascott*, 94 F.Supp.2d 1052, 1056 (N.D. Cal. 2000). "The court should

2   also consider whether the impleader will 'disadvantage the existing action' by, among other things,

3   complicating and lengthening the trial, or introducing extraneous questions." *Id. citing Southwest*

4   *Administrators*, 791 F.2d at 777.

5       The Court finds that despite the timeliness of Metlife's Motion, the claims it seeks to bring

6   against NAVL and its agents will result in a meaningful and unacceptable delay of this matter by

7   complicating the issues to be decided through the introduction of extraneous questions associated

8   with subrogation, the Carmack Amendment, and the settlement such that the overall disposition of

9   the present dispute will be substantially prolonged. The issues of Metlife's rights to subrogate, while

10   related to the outcome of the instant action, is not dependent on the outcome of the instant action.

11       For this reason, the Court recommends denial of Metlife's Motion. This recommendation,

12   of course, does not impact Metlife's ability to bring its claims against NAVL, Belmont, and Billups

13   in a separate action.

14   **III.    Recommendation**

15       Accordingly, and based on the foregoing, IT IS HEREBY RECOMMENDED that the

16   Motion for Leave to File Third-party Complaint filed by Defendant Metropolitan Property &

17   Casualty Insurance Company dba Metlife Auto & Home's (ECF No. 35) be DENIED.

18       Dated this 27th day of September, 2021.

19

20

21

22   ELAYNA J. YOUCHAH

      UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

1

2
       

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>NOTICE</u>**

       Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  In 1985, the Supreme Court held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).